GLADNEY, Judge.
Alleging breach of a contract of employment, the plaintiff, Dr. S. C. Aymond, veterinarian and cattle man of Bunkie, Louisiana, sues the defendant, The Haas Investment Company, Inc. for $1,177.39, representing salary and commissions which would have accrued except for his untimely dismissal by the employer.
From a judgment in favor of plaintiff as prayed for defendant prosecuted suspensive and devolutive appeals.
. The defense is set forth in the following contentions:
“(1) That, though a contract of employment providing for a salary and commissions was entered into between plaintiff and defendant, same was voluntarily terminated and plaintiff has been paid everything due him to the date of said termination, which fact of termination was acquiesced in by plaintiff;
“(2) And, in the event this Court should hold that the contract was not voluntarily terminated, defendant submits that all plaintiff can recover under the provisions of Article 2749 of the Civil Code of Louisiana is the remaining or unpaid portion of his salary due for the normal term of the contract;
“(3) And, should this Court hold that the contract between the parties was not terminated and that plaintiff is entitled to commissions on gross sales of cattle, then it is submitted that said commissions should be computed only on sales made in the ordinary course of business as originally contemplated by the parties.”
Dr. Aymond’s contract of employment commenced on March 1, 1949, under a verbal agreement which was later confirmed in the following letter which states the terms of the contract here in controversy:
“The Haas Investment Company, Inc.
“P. O. Drawer 17S0
“Branch Office
“Bunkie, Louisiana
“Alexandria, Louisiana
“May 9, 1949
“Dr. S. C. Aymond
“Bunkie, Louisiana
“Dear Sid:
“With reference to my verbal agreement with you concerning the Company’s cattle, which you are presently managing, this letter will confirm the agreement in writing.
“During the current year which began March 1, 1949, and will operate through *481 February 28th, 1950, the following' was mutually agreed between you and me.
“100.00 per month salary
“$50.00 per month traveling expense and in addition to the above you are to receive eight per cent of the gross sales up to $10,000.00 all over $10,000.00 the per centage figure will be six per cent.
“I am giving you this so that you may have something in your files.
“With kindest regards, I am
“Sincerely yours,
“The Haas Investment Company, Inc.
“Samuel Haas, President.”
Plaintiff’s duties consisted of managing the pastures, purchasing, attending and selling the cattle to be grazed on Greeville, a tract of land owned by defendant. Prior to August 31, 1949, some $17,000 worth of cattle were purchased at auction sales or otherwise under the agreement, but sales by plaintiff from the cattle so purchased were negligible. On the above date the board of directors of the company passed a resolution “to liquidate the Greeville cattle to the company plantation and dispense with Dr. Sidney Aymond’s services.” This action was communicated by Samuel Haas to Dr. Aymond in a letter wherein he expressed satisfaction with the services rendered and explained that the termination effective October 1, 1949 was caused by action of the board of directors in closing the cattle pastures at Greeville. Upon receipt of this letter, Dr. Aymond advised defendant’s president that he would expect his pay and commissions.
During January and February 1950, after the discovery that some of the cattle were infected with Bang’s disease, defendant sold for $8,467.43 a large number of the cattle which had been purchased by plaintiff who claims a commission of 8% thereon or $677.39. This sum added to plaintiff’s salary of $500 for the five months of the unexpired term of the contract totals $1,177.-39, the amount claimed.
Civil Code Article 2749(2720) stipulates that if, without any serious ground of complaint a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived. This court had occasion in a recent opinion, Steedley v. Winbarg, La.App., 1950, 44 So.2d 193, to give effect to this codal article. The defendant discharged her overseer whom she had employed on an annual basis because of the sale of the plantation. In permitting recovery, Judge Kennon, 44 So.2d at page 194, stated:
“;It is unfortunate that the death of Mr. Winbarg and the sale of the plantation shortly afterwards made it to Mrs. Winbarg’s interest to discontinue the employment of plaintiff. However, as far as plaintiff was concerned, the dismissal was not justified by any lack of attention by plaintiff to her duties as overseer and therefore defendant is liable for the remainder of the year’s wages. Article 2749, Revised Civil Code; Fletcher v. Crichton, 183 La. 551, 164 So. 411.”
Manifestly Article 2749 is of a penal nature and should be construed within narrow bounds, as prescribed in the words “without any serious ground of complaint”. What then is the justification relied upon by the defendant?
First, it is declared that the contract was voluntarily terminated and plaintiff paid in full to the date of termination, which, so it is averred, was acquiesced in by plaintiff. The record does not sustain this contention. Our learned brother below correctly analyzed the evidence on this point when, in his decree, he stated:
“His claim is further resisted upon the grounds that on August 31, 1949, when its President advised him that his services were no longer needed and consequently would terminate on October 1, 1949, it is contended the plaintiff agreed verbally with the said Samuel Haas to an amicable termination of his employment, and that as a result thereof, both parties were relieved of all *482 further liability under the terms of the contract existing between them. To be more explicit, the defendants contend that plaintiff agreed to a termination of said contract with defendant company since he did not protest his discharge following receipt of his letter of September 26, 1949.
“This the plaintiff denies, but on the contrary, he is positive in his testimony that after being informed of defendant company’s notice to him of his discharge, he informed Mr. Samuel Haas, its President, that he expected to be paid his commission, and according to his testimony Mr. Haas told him, ‘If the company didn’t pay it, he would.’ And the same condition prevailed with respect to his salary for the rest of the one year period of employment.”
In Van Denburgh v. H. T. Higginbotham, Inc., 1929, 168 La. 461, 122 So. 581, the Supreme Court was presented with the identical contention urged here. That court held it was not necessary for plaintiff to protest against his dismissal, or to offer his services at the time, or to put defendant in default by demanding the continued performance of the contract of employment on its part. Thus, upon receipt of the letter of dismissal Dr. Aymond was under no legal obligation to act further except to sue upon non-payment of the sum due him under Article 2749, C.C. In the excellent opinion filed in the instant record by the judge a quo he determined there was no dissolution of the contract or acquiesence on the part of plaintiff. The record discloses plaintiff’s testimony is uncontradict-ed and abundantly supports the conclusion reached.
Defendant urges, secondly, that if it be held that the contract was not voluntarily terminated, plaintiff would be entitled only to the unpaid portion of his salary due for the normal term of the contract, specifically the sum of $500. The effect of this contention would be to strike from the plain terms of the contract the provision for payment of commissions reading thusly:
“and in addition to the above you are to receive eight per cent of the gross sales up to $10,000.00, all over $10,000.-00 the percentage figure will be six per cent.”
This language permits of none other inference than that the contemplated commissions constituted a serious inducement to plaintiff to accept the contract. Certainly it was a major consideration between the parties. If it be implied plaintiff’s recovery should be restricted to the monthly stipend, we may observe that “salary” means “remuneration”, and surely in this case commissions are comprehended.
Thirdly, defendant asserts that the commissions should be computed only on sales made in the ordinary course of business as originally contemplated by the parties. It is argued that the parties had in mind only the routine sales made during the employment and that it was never expected that plaintiff should profit through sales necessitated because of disease. During January 1950 it was found that some of the cattle had 'Bang’s disease and it was recommended that large sales be immediately made, and this was done. It should here be noted that plaintiff bought the cattle in the manner prevailing at that time and he did not test the animals prior to purchase. Whether the disease was spread from the purchased cows or those already owned by defendant is not settled by the record. Here it is of no consequence because the presence of the disease was not detected until over four months after plaintiff’s services were terminated. By again referring to the letter confirming the terms of the agreement, we find the commissions were to be based on “gross sales”, meaning according to Webster, “Whole, entire, total * * Webster’s Twentieth Century dictionary. Disease is not uncommon among cattle, especially Bang’s disease. Fortunately for the owner, the cattle were still fit for human consumption and thus marketable as beef cattle. Had the disease been of a kind that destroyed the entire value of the animal, in such event, there would have been no sale and Dr. Ay- *483 mond would not have been entitled to a commission. The judgment appealed from was with the plaintiff on this issue, and we agree therewith.
The judgment appealed from is affirmed at appellant’s cost.
KENNON, J., not participating.